[Civ. No. 1050.    Second Appellate District.—November 13, 1911.]

## LOUIS L. BERTONNEAU, Respondent, v. SOUTHERN PACIFIC COMPANY, a Corporation, Appellant.

ACTION AGAINST COMMON CARRIER—SHIPMENT FROM SPOKANE TO PASADENA—ARTICLES SPECIFIED IN CIVIL CODE—NOTICE—VALUE—SUPPORT OF FINDINGS—QUESTION OF LIABILITY.—In an action against a railroad company doing business as a common carrier in this and other states upon an alleged contract of shipment from Spokane, Washington, to Pasadena, in this state, to recover the value of the articles shipped in the sum of $1,000, for nondelivery to the person designated, where defendant pleaded that the articles shipped were those designated in section 2200 of the Civil Code, limiting liability to such articles shipped in California to $50 for want of notice of their contents, it is held that though a finding that defendant had notice of their contents is against the evidence, yet a finding that it had notice that their value was fixed at $1,000 is supported by

the evidence, and that the ultimate question of liability depends upon the law of the place of contract.

Id.—Admission as to Place of Contract—Liability Under Civil Code Inapplicable.—Where it is admitted by the pleadings that the contract of shipment by the defendant was made at Spokane, in the state of Washington, for one continuous shipment therefrom to Pasadena in this state, and it is conceded that the law of the state of Washington contains no such statute as that of California, and does not limit the common-law liability of the common carrier as to contracts entered into in that state, the law of the state of Washington controls the contract of carriage made therein for shipment of goods therefrom to the point of destination in this state, and the provisions limiting any liability under section 2200 of the Civil Code have no application to the facts of such a case.

Id.—General Rule as to Law of Place—Performance.—The general rule affecting the determination of the liabilities of parties to a contract requires that the law of the place of contract shall govern, unless it is affirmatively made to appear that the parties, at the time of making it, clearly had some other law in view; and where it appears that the service of transportation agreed to be performed by the defendant was to commence in Spokane and to continue until the goods had been delivered at Pasadena, it cannot be said that performance shall be deemed only to have been made at the place where delivery was contracted for.

Id.—Carrier's Contract not Varying With Part Performance in Other States—Comity.—The carrier's contract, made in one state, does not vary with each jurisdiction in which it may be partly performed, since the service to be rendered thereunder is single, and whatever is done in intermediate states is a part of the single act of transportation from the place of departure to the place of destination, in performance of an obligation assumed and undertaken in one state, and which is indivisible. The obligations arising out of such contract can only be created by the laws of one state, and force and effect should be given by sister states, on the ground of comity, to the foreign facts thus created, even though the same rights would not have been created by the law of the forum.

Id.—Enforcement of Washington Contract in California—Distinction Between Obligation and Remedy—Recovery of Reasonable Value Sustained.—Though the remedy in this state under a contract made in Washington is not affected by the laws of Washington, yet a distinction must be made between the obligation of the contract and the remedy in this state for its enforcement. When the contract for carriage was made in the state of Washington, it was made subject to the common-law rule there creating an obligation to pay the reasonable value of the goods, in case they were lost or destroyed without delivery. This obligation will be enforced

in this state according to the rules of pleading and evidence therein for the recovery of such reasonable value, and where it was found upon sufficient evidence to be the sum of $1,000, for which recovery was had, the decision must be sustained.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, for Appellant.

Sidney J. Parsons, for Respondent.

JAMES, J.—Plaintiff brought this action to recover the sum of $1,000, alleged to be the reasonable value of certain goods, wares and merchandise which had been committed to the custody of defendant as a common carrier for transportation from the city of Spokane, Washington, to Pasadena, California. Judgment was in favor of plaintiff in accordance with the prayer of his complaint, from which judgment defendant has appealed. The appeal is to be considered upon the judgment-roll, together with a bill of exceptions. The sufficiency of the evidence to sustain the decision of the court, and the failure of the trial court to find upon certain affirmative allegations contained in defendant's answer, are the only questions presented for review.

The plaintiff in his complaint alleged that the goods, wares and merchandise were shipped from Spokane, Washington, on the twenty-ninth day of January, 1908, over the railway line of the Oregon Railway and Navigation Company and the railway line of the defendant, and that the plaintiff caused the freight to be prepaid upon said merchandise, and "that the defendant then and there agreed to deliver the said goods, wares and merchandise safely to A. Bertonneau in the city of Pasadena, California." In allegations following these, it was set out that the merchandise was shipped without any contract being made limiting the amount of damages to be paid in case the goods were lost or destroyed, and that the freight charges were fixed in accordance with this contract and were prepaid at the time of shipment. None of these allegations of fact were denied, but the defendant by its answer did deny the

further allegations of plaintiff's complaint as to the loss of the goods and the amount of damage, and then in the answer the following affirmative allegation appeared: "Defendant, according to its information and belief, alleges that the goods mentioned in plaintiff's complaint were all contained in one package and consisted of gold, silver, platinum, precious stones, imitations thereof, pictures, glass, chinaware, statuary, silk, laces and plated ware, and that at the time of the receipt thereof this defendant had no notice of the nature of said freight, and no notice was given to this defendant or to the Oregon Railway and Navigation Company, or to any of the agents, servants or employees of any of the carriers of said goods as to the nature of said freight." We call attention here to the condition of the pleadings by which it was admitted on the part of defendant that by the contract of shipment it agreed to transport the goods of plaintiff from the city of Spokane to the city of Pasadena. This admission results from the failure of defendant by its answer to deny any of the allegations of the complaint as to the making of the contract for carriage. The court made its findings as to the character of the goods shipped only in general terms, referring to them as goods, wares, merchandise and household goods, although the evidence showed that they were goods of the character and kind described by defendant in its answer. By finding 6, however, it was determined that at the time of making the shipment defendant and its agents were informed of the class, kind and nature of the goods contained in the package shipped; and in another finding it was stated that at the time of shipment it was made known to defendant, through the agents of the Oregon Railway and Navigation Company, that the value of the merchandise was more than $1,000. Defendant claims the benefit of the provisions of section 2200 of the Civil Code of California, under which, if the allegations contained in paragraph VI of defendant's answer are true as to the facts, plaintiff was not entitled to recover more than $50 for the loss of his merchandise. The provisions of the section referred to are as follows: "A common carrier of gold, silver, platina, or precious stones, or of imitation thereof, in a manufactured or unmanufactured state; of timepieces of any description; of negotiable paper or other valuable writing; of pictures, glass, or chinaware; of

statuary, silk, or laces; or of plated ware of any kind, is not liable for more than fifty dollars upon the loss or injury of any one package of such articles, unless he has notice, upon his receipt thereof, by mark upon the package or otherwise, of the nature of the freight; nor is such carrier liable upon any package carried for more than the value of the articles named in the receipt or the bill of lading." Necessarily, assuming that the law of California is to be looked to to determine the liability of a carrier for the loss of freight intrusted to it for transportation, and if there is any evidence to sustain the finding of the trial court that defendant had notice of the kind and character of the goods shipped, the failure of the court to find specifically that the merchandise was of the kind described in section 2200 of the Civil Code would be immaterial. From a careful examination of the testimony as set out in the bill of exceptions, it must be concluded that the evidence was insufficient to justify the court in determining that defendant did so have notice of the kind and character of the goods committed to its charge. There is, then, directly presented the one question, and it is so admitted by counsel for both plaintiff and defendant, as to whether in determining the extent of the liability of defendant for the admitted loss of plaintiff's goods, the statute of California is to be invoked, or whether the common-law liability assumed by a common carrier of freight applies in this case in its fullest extent. It was stipulated between counsel that all of the law of the state of Washington, in which state the contract of shipment was made, might be taken notice of by the trial court and by this court, and it is also agreed that in the state of Washington there is in existence no statute by which any limitation is placed upon the common-law liability of a carrier. It must be admitted that the general rule affecting the determination of the liabilities of parties to a contract requires that the law of the place where the contract is made shall govern. This rule admits of some variation in practice, dependent sometimes upon the question as to where the contract is to be performed, and always subject to the intention of the parties as expressed or implied from their acts and conduct at the time of making the contract. "The law of the place where the contract is made governs in determining the liability of the carrier, unless the parties at the time of

making it had some other law in view." (*Palmer* v. *Atchison etc. R. R. Co.*, 101 Cal. 187, [35 Pac. 630].) This case cites with approval, among other cases, that of *Liverpool etc. Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, [9 Sup. Ct. 469, 32 L. Ed. 788], in which the supreme court of the United States exhaustively reviews different decisions touching this question, and, after noting the conflict existing between various of the authorities, deduces a general rule as follows: "This review of the principal cases demonstrates that according to the great preponderance, if not the uniform concurrence, of authority, the general rule, that the nature, the obligation and the interpretation of a contract are to be governed by the law of the place where it is made, unless the parties at the time of making it have some other law in view, requires a contract of affreightment, made in one country between citizens or residents thereof, and the performance of which begins there, to be governed by the law of that country, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other country." We cite, also: 2 Wharton on Conflict of Laws, sec. 471b; 1 Hutchinson on Carriers, sec. 201 et seq. Unless, then, some fact, circumstance or condition appears affecting the contract for shipment as it was made in this case, which would entitle defendant to invoke the law of this state in limitation of the amount of recovery, it follows that the rights of the parties must be measured by the common-law rule. Defendant insists that such a condition is shown by reason of the fact that performance of the contract was to be made on its part in the state of California. If we consider only the fact that the goods were to be delivered at Pasadena, California, as including all of the obligation denoted by the meaning of the word "performance," then undoubtedly the position of appellant is well taken. But attention has already been called to the condition of the pleadings where, by a failure of defendant to deny the making of the contract in the terms as alleged by plaintiff, it admitted that the service of transportation agreed to be performed by it was to commence at Spokane, Washington, and to continue until the goods had been delivered at Pasadena. The authorities hold that in such a case it cannot be said that performance shall be deemed only to have been made at the place

where delivery is contracted for.   Mr. Hutchinson in his work
on Carriers, above cited, and at section 210, volume 1, says:
"On principle it would seem that the carrier's contract does
not vary with each jurisdiction in which it may be partly
performed, for the service rendered is single; the transporta-
tion performed and the liability assumed being the measure
on the one side by which the compensation to be paid on the
other side is determined.   Whatever is done in intermediate
states is a part of the single act of transportation from the
place of departure to the place of destination in performance
of an obligation assumed and undertaken in some one state,
and which is indivisible.   The obligations arising out of a
contract can only be created by the laws of one state, and
force and effect should be given them in conformity with the
law of the state which created them.   These obligations
should not vary from time to time as goods pass from state
to state. . . . Sec. 215.   The state which creates the rights
arising out of a particular contract having been ascertained,
full force and effect should be given by sister states on the
ground of comity to the foreign facts thus created, even
though the same rights would not have been created by the
law of the forum."   In our opinion, therefore, the decisions
holding that the law of the place where performance is due
is the law which must govern in fixing the liabilities of the
parties to a contract, have no application to the facts of this
case.   But appellant advances a further contention: It is
argued that, giving the rule of *lex loci contractus* full effect,
and admitting its application to this case, that still the stat-
ute of California must govern, inasmuch as its provisions are
provisions affecting the remedy to be pursued by the parties,
and not a right arising out of the contract.   It may be ad-
mitted that any statute which affects only the remedy is bind-
ing upon the forum administering such remedy, regardless
of the law governing the same matters as it may exist in the
country where the contract was made.   But we do not agree
with counsel in his contention that only the remedy is here
affected.   The statute, when it proposes to limit the liability
of a carrier, affects the obligation assumed by the latter.
When the contract for carriage was made in the state of Wash-
ington, it was made subject to the common-law rule creating
a liability against the defendant, in the event that the goods

to be transported by it were lost or destroyed, to an amount of the reasonable value of such goods. Upon entering into the contract of shipment, as it was there made, defendant assumed this obligation to answer to plaintiff for loss according to the full extent of the rule referred to. "The obligation of a contract consists in its binding force on the party who makes it. This depends on the laws in existence when it is made; these are necessarily referred to in all contracts, and forming a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated, the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies then in force." (*McCracken* v. *Hayward,* 43 U. S. (2 How.) 608, [11 L. Ed. 397].) "The action springs from the obligation, and hence the 'cause of action' is simply the obligation. . . . The cause of action is therefore to be distinguished, also, from the 'remedy,' which is simply the means by which the obligation or the corresponding action is effectuated. Pomeroy on Pleading and Practice, sec. 453." (*Frost* v. *Witter,* 132 Cal. 421, [84 Am. St. Rep. 53, 64 Pac. 705].)

There was some evidence to sustain the finding of the court that information was given at the time of the shipping, to the agent of the railway company at Spokane, as to the value of the goods of plaintiff being in excess of $1,000, and, therefore, this finding cannot be held to have been erroneously made. No other questions are argued in the briefs of counsel. From the conclusions we have expressed, it follows that the decision of the trial court must be sustained.

The judgment is affirmed.

Allen, P. J., and Shaw, J., concurred.